IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


GARY LINDALE HOLMES                                                    PLAINTIFF

                    v.                     Civil No. 06-1041

DEBBIE HOWARD, Jail Nurse;
SHERIFF KEN JONES; and the
UNION COUNTY CRIMINAL
JUSTICE CENTER                                                        DEFENDANTS


## MEMORANDUM OPINION

Before the court for decision is the defendants' motion for summary judgment motion (Doc. 14).  To assist plaintiff in responding to the summary judgment motion, a questionnaire was propounded to the plaintiff  (Doc. 17).  Plaintiff's response to the questionnaire was filed as his response to the summary judgment motion (Doc. 18).

## BACKGROUND

Gary Lindale Holmes was booked into the Union County Detention Center (UCDC) on August 29, 2005.  *Plaintiff's Response* (Doc. 18) (hereinafter *Resp.*) at ¶ 1.  He was incarcerated there solely because of pending criminal charges.  *Id.*  at ¶ 2.  He remained at the UCDC until September 16, 2005.  *Id.* at ¶ 3.  Holmes was released on September 16th so that he could seek further medical attention.  *Id.* at ¶ 5; *Defts' Ex.* B at ¶ 12 & ¶ 13.

While Holmes was incarcerated at the UCDC, he began to have medical problems with his hand.  *Resp.* at ¶ 6.  He first notified the jail nurse of the problems with his hand on September 13, 2005.  *Id.* at ¶ 7(A).

To obtain medical care at the UCDC, inmates put in sick call slips.  *Resp.* at ¶ 30(B).

-1-

Ordinarily, a slip was put in one day and you would be seen by the nurse the next day.  *Id.*

Debbye Howard was the jail nurse for UCDC.  *Defendants' Exhibit* B (hereinafter *Defts' Ex.*) at ¶ 1.  On September 13th, Howard indicates she was informed that Holmes' left hand, around the thumb area, was grossly swollen.  *Id.* at ¶ 3.

According to Holmes, it was his right hand that was swollen.  *Resp.* at ¶ 7(B).  Holmes indicates the entire hand was swollen not just around the thumb area.  *Id.*  Holmes had not injured his hand.  *Id.* at ¶ 8.

After Howard was notified of the condition of Holmes' hand, she maintains she immediately called a doctor who came to the jail around noon on September 13th to examine Holmes' hand.  *Defts' Ex.* B at ¶ 4.  Holmes cannot recall exactly when he was seen by the doctor but he thinks it was a day or two before he saw anyone.  *Resp.* at ¶ 9.

According to Howard, the doctor ordered an x-ray of Holmes' hand and a serum uric acid test to check for gout.  *Defts' Ex.* B at ¶ 5.  Holmes only recalls the x-ray.  *Resp.* at ¶ 10.

Howard indicates Holmes was given a shot of Decadron, was told to continue taking Ibuprofen, 600 mg., four times a day, and to use warm soaks on his hand three times a day.  *Defts' Ex.* B at ¶ 6.  Howard states Holmes was also told he would be seen again on September 15th.  *Id.* at ¶ 7.  Holmes does not recall what medication he was given or being told he would be seen again on the 15th.  *Resp.* at ¶ 12 & ¶ 13.

Holmes was seen again by the same doctor on September 15th and his hand was very swollen.  *Defts' Ex.* B at ¶ 8; *Resp.* at ¶ 13.  The x-rays that were taken were normal and the uric acid was slightly above low normal range.  *Defts' Ex.* B at ¶ 9.  Holmes indicates he never saw the x-rays and wouldn't know what they said if he did.  *Resp.* at ¶ 14.  Further, he does not recall

-2-

taking the uric acid test. *Id.*

According to Howard, the doctor ordered Holmes to be taken to an orthopaedist as soon as possible. *Defts' Ex.* B at ¶ 10. The doctor also ordered Indocin and Darvocet for pain. *Id.* at ¶ 11.

Holmes does not know if the doctor ordered him to be taken to an orthopaedist. *Resp.* at ¶ 16. Holmes just knows he was not taken to one. *Id.* With respect to the medication, Holmes states he was given the medication and then released from jail when his sister came to take him to the doctor. *Id.* at ¶ 17.

According to Howard, Holmes was seen by an orthopaedist at around 1:00 p.m. on September 16th. *Defts' Ex.* B at ¶ 12. Howard talked to the Sheriff that day regarding Holmes' hand and told the Sheriff that she believed Holmes needed to be treated more vigorously than he could be treated while in jail. *Id.* In turn, Howard states the Sheriff talked to the Judge and Holmes was released from jail to seek further medical treatment. *Id.* at ¶ 13. Holmes indicates he has no knowledge about these conversations between Howard and Sheriff Jones or the Sheriff and the Judge. *Resp.* at ¶ 19 & ¶ 20.

Holmes maintains he was released because the jail did not want to take him to the hospital or the emergency room. *Resp.* at ¶ 5. Instead, Holmes indicates Howard called his sister and told her that Holmes needed to be taken to the emergency room. *Id.* Holmes indicates his sister took him to the emergency room at about 3:30 or 4:00 p.m. *Id.* at ¶ 18.

During his incarceration at the UCDC, Holmes was in a single occupancy cell because he had informed detention center personnel that he had trouble with some of the guys he believed to be in population. *Resp.* at ¶ 21. Although Howard asserts that all floors in the UCDC are

mopped and individuals are offered the mop or broom to clean their rooms, *defts' ex.* B at ¶ 16, Holmes states the floors are not mopped daily and inmates sometimes have to beg for the use of mops or brooms just to clean, *resp.* at ¶ 22 & ¶ 23.

Every time Holmes requested medical treatment, he was seen by the jail nurse or by a physician. *Resp.* at ¶ 27. His claim that the defendants were deliberately indifferent to his serious medical needs is based solely on the fact that Union County did not pay for his medical care. *Resp.* at ¶ 28. Holmes indicates Howard said the jail did not have anyone to take him to the hospital or sit with him there. *Id.* Holmes states Howard told his sister that she better come and get him and take him to get some help for his hand. *Id.* At first, Holmes states his sister told Howard that since Holmes was in jail they should care for him. *Id.* However, Holmes indicates he then asked his sister to please come and get him because he was in lots of pain and couldn't bear the pain. *Id.* Holmes believes he was given the run around about who was going to take him for medical care for his hand. *Id.* at ¶ 29.

Holmes never spoke to Sheriff Ken Jones about his need for medical care for his hand. *Resp.* at ¶ 31. Holmes was asked to explain how Howard exhibited deliberate indifference to his serious medical needs. *Id.* He responded that he felt she should have taken him for help when his hand first started swelling. *Id.* Because of the delay, Holmes indicates the swelling spread from his right thumb area to his whole hand. *Id.* at ¶ 32.

Following his release from jail on September 16th, Holmes indicates his sister took him to the emergency room at the Medical Center of South Arkansas in El Dorado, Arkansas. *Resp.* at ¶ 33. Holmes indicates he was told he had staph infection from being in contact with filth, or touching something that was filthy. *Id.* Holmes indicates his hand was cut open twice to let the

-4-

infection out and he was given after-care treatment consisting of daily whirlpool therapy.  *Id.*

Holmes believes the infection was caused by the filthy condition of the jail cells and showers.  *Resp.* at ¶ 34.  He indicates he was given a filthy mattress with no sheets and had to put the mattress on the floor.  *Id.*  Holmes indicates they were not provided cleaning supplies and the cloths they were given to clean with were dirty.  *Id.*

Holmes was booked into the jail again on October 8, 2005, on a parole revocation charge. *Resp.* at ¶ 4.  When he was booked back into jail, Holmes states he told the nurse he had to go to after-care everyday so his hand would get "back right."  *Id.* at ¶ 33.  However, he states he was never taken to after-care.  *Id.*  Because he did not receive after-care, Holmes maintains he cannot bend his right thumb.  *Id.  See also Resp.* at page 19-20.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A case

-5-

founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that each defendant acted under color of state law and that he or she violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).  Mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

From August 29, 2005, through September 16, 2005, Holmes was a pretrial detainee. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  In *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006), the Eighth Circuit held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle  v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  The deliberate indifference standard

-6-

includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain

-7-

free to exercise their independent medical judgment.  Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976).  Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.  *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239.  *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

Holmes contends Nurse Howard exhibited deliberate indifference because she failed to take him for help quickly enough and did not ensure that he received after-care.  *Resp.* at ¶ 31, ¶ 32 & ¶ 33.  He maintains the delay in his receipt of medical care was due to Nurse Howard attempting to find a way to get him out of jail so the jail would not have to bear the expense of his treatment.  *Id.* at ¶ 32.

Holmes, however, concedes the he first notified Nurse Howard of the problem with his hand on September 13th.  *Resp.* at ¶ 7(A).  While Holmes indicates he does not recall the date he was first seen by the doctor, Nurse Howard has by affidavit indicated a doctor saw Holmes at the jail on September 13th the same day Holmes first complained of a problem with his hand. *Defts' Ex.* B at ¶ 4.  An x-ray and serum uric acid test was ordered and Holmes was prescribed medication.  *Id.* at ¶ 5 & ¶ 6.  Holmes was seen again by the doctor on September 15th.  *Defts' Ex.* B at ¶ 8; *Resp.* at ¶ 13.  Additional medication was prescribed.  *Defts' Ex.* B at ¶ 10 & ¶ 11. Holmes received the prescribed medication.  *Resp.* at ¶ 17.

The following day, Holmes was released from jail and treated at the emergency room. *Defts' Ex.* B at ¶ 12 & ¶ 13; *Resp.* at ¶ 18.  According to exhibits Holmes attached to the complaint, *see* (Doc. 4-2) at pages 6-8, he was hospitalized from September 16th to September 19th and treated again by Dr. Kenneth Gati on September 22nd.  Holmes was not incarcerated

-8-

again until October 8th.  *Resp.* at ¶ 4.

We do not believe there are any genuine issues of material fact as to whether Nurse Howard exhibited deliberate indifference to Holmes' serious medical needs.  Instead, Holmes merely disagrees with Nurse Howard's initial evaluation of his hand condition and her failure to immediately send him for emergency medical treatment.  A mere disagreement with a medical evaluation does not establish deliberate indifference.  *See e.g., Alberson v. Norris*, 458 F.3d 762 (8th Cir. 2006)(Prisoner's disagreement with treatment decisions does not establish deliberate indifference).

With respect to an alleged delay in medical care, at most, there was a small delay between Holmes' submission of a sick call slip and the doctor being called to the facility on September 13th.

> "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of the delay in treatment.  To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment."

*Lauglin v. Schriro*, 430 F.3d 927 (8th Cir. 2005)(internal citations and quotation marks omitted).  In this case, there is nothing in the record before the court to suggest that this short delay caused any detrimental effect on Holmes' medical condition.  Once Holmes' was seen by the doctor, there is no indication in the record that Nurse Howard interfered in anyway with the treatment suggested by the doctor or delayed Holmes' receipt of treatment.

Holmes argues that deliberate indifference is established by the fact that he was in essence thrown out of jail so the county would not have to pay for his medical care.  There are two problems with this argument.  First, Holmes was seen by a doctor twice within two days of his

AO72A
(Rev. 8/82)

initial request for medical care and an x-ray of his hand was taken and various medication prescribed.   Second, while the Eighth Amendment's prohibition against cruel and unusual punishment requires jails to provide basic medical care to inmates, there is no requirement that the jails provide the medical care free of cost.   *See e.g., Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997)(deliberate-indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society).   Inmates may be constitutionally required to pay for their own medical expenses, if they can afford to do so.   *Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999).   *See also Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981)(no basis for due process claim where deductions from prisoner accounts were assessments for value received).

While there may be instances when deliberate indifference is established because treatment decisions are based on monetary incentives rather than medical views, *see e.g., Chance v. Armstrong*, 143 F.3d 698, 703-04 (2d Cir. 1998)(action improperly dismissed for failure to state claim where inmate alleged treatment recommendations were based on monetary incentives and not medical views),   here Holmes contends not that a treatment decision was based on a monetary decision but that the decision to **release him from jail** was based on jail's desire not to be liable for the cost of medical treatment.   Holmes has not alleged that he was unable to obtain necessary medical care because of the fact that he was released from custody on September 16th.   In fact, he asserts that he was immediately taken by his sister to the emergency room.   *Resp.* at ¶ 18.   Holmes claim is based solely on the fact that he believes the detention center should have been liable for the cost of his medical care.   *Resp.* at ¶ 28.   Under the circumstances of this case, we hold no genuine issue of fact exists as to whether the defendants

-10-

exhibited deliberate indifference when they "arranged" for Holmes to be released or cited out from jail to seek further medical attention.

With respect to Holmes' need for after-care when he became re-incarcerated on October 8, 2005, plaintiff attached to his complaint the bills he had received for his medical care following his release from the UCDC on September 16th and defendants submitted with their summary judgment motion plaintiff's responses to interrogatories and requests for production of documents, *defts' ex.* C, nothing in these documents or in plaintiff's response to the summary judgment motion establishes Holmes was undergoing daily after-care when he was re-incarcerated on October 8th, or that a doctor had prescribed daily after-care, or that defendants were aware of plaintiff's serious medical need for after-care. In short, there are no genuine issues of fact as to whether defendants exhibited deliberate indifference to the plaintiff's serious medical need for after-care.

## CONCLUSION

For the reasons stated, the defendant's motion for summary judgment (Doc. 14) will be granted. A separate order in accordance with this opinion will be entered.

DATED this 14th day of February 2007.


/s/ *Harry F. Barnes*
HON. HARRY F. BARNES
UNITED STATES DISTRICT JUDGE

-11-

**AO72A**
**(Rev. 8/82)**